**PETITION FOR A WRIT OF HABEAS CORPUS BY A PERSON IN STATE CUSTODY**

Name   KNIGHT       TENACE       D.
_____(Last)_____(First)_____(Initial)_____

Prisoner Number   T-75937

Institutional Address   P.V.S.P (ASU-190), P.O.Box 8505, Coalinga, 93210

*E-filing*

*FILED*
*(ENDORSED)*
*FILED*
OCT 07 2009
DAVID H. YAMASAKI
Chief Executive Officer/Clerk
Superior Court of CA County of Santa Clara
BY_____
DEPUTY

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

TENACE DEMOND KNIGHT
_____
(Enter the full name of plaintiff in this action.)

vs.

CALIFORNIA DEPARTMENT OF

CORRECTIONS
_____

_____
(Enter the full name of respondent(s) or jailer in this action)

Case No. CC469460
(To be provided by the clerk of court)

**PETITION FOR A WRIT
OF HABEAS CORPUS**

**C 10   0276**

**SBA**

**(PR)**

## Read Comments Carefully Before Filling In

Underline When and Where to File

    You should file in the Northern District if you were convicted and sentenced in one of these counties: Alameda, Contra Costa, Del Norte, Humboldt, Lake, Marin, Mendocino, Monterey, Napa, San Benito, Santa Clara, Santa Cruz, San Francisco, San Mateo and Sonoma. You should also file in this district if you are challenging the manner in which your sentence is being executed, such as loss of good time credits, and you are confined in one of these counties. Habeas L.R. 2254-3(a).

    If you are challenging your conviction or sentence and you were not convicted and sentenced in one of the above-named fifteen counties, your petition will likely be transferred to the United States District Court for the district in which the state court that convicted and sentenced you is located. If you are challenging the execution of your sentence and you are not in prison in one of these counties, your petition will likely be transferred to the district court for the district that includes the institution where you are confined. Habeas L.R. 2254-3(b).

PET. FOR WRIT OF HAB. CORPUS          - 1 -

Who to Name as Respondent

You must name the person in whose actual custody you are. This usually means the Warden or jailor. Do not name the State of California, a city, a county or the superior court of the county in which you are imprisoned or by whom you were convicted and sentenced. These are not proper respondents.

If you are not presently in custody pursuant to the state judgment against which you seek relief but may be subject to such custody in the future (e.g., detainers), you must name the person in whose custody you are now and the Attorney General of the state in which the judgment you seek to attack was entered.

## A. INFORMATION ABOUT YOUR CONVICTION AND SENTENCE

1. What sentence are you challenging in this petition?

(a) Name and location of court that imposed sentence (for example; Alameda County Superior Court, Oakland):

Santa Clara County
Court

☐ J. Hedding 190 W. Hedding St.
San Jose Ca. 95110
Location

(b) Case number, if known   H031365

(c) Date and terms of sentence  March 23, 2007 — 44yrs 4mos 85%

(d) Are you now in custody serving this term? (Custody means being in jail, on parole or probation, etc.)      Yes  X   No _____

Where?

Name of Institution: Pleasant Valley State Prison

Address: P.O. box 8505 (ASU-90), Coalinga Ca. 93210

2. For what crime were you given this sentence? (If your petition challenges a sentence for more than one crime, list each crime separately using Penal Code numbers if known. If you are challenging more than one sentence, you should file a different petition for each sentence.)

4 counts of 2nd degree Robbery in Violation of PC 211-212.5(c) during comm. of 12022.53
(b) 1 count of 2nd degree attempted Robbery in Violation of PC 211-212.5(c) during comm. of 12022.53(b),
1 count of Reckless driving 2800.2(a), 1 count of theft or Unauthorized use of a vehicle 10851(a), 1 count
assault with a fire arm 245(b)(2), 1 count of possession of a firearm by a felon 12021(a)(1). with
priors within sections 667(b) through(i) & priors within 667(a) & 667.5(b)...

PET. FOR WRIT OF HAB. CORPUS        - 2 -

3.  Did you have any of the following?

        Arraignment:                        Yes  X    No \_\_\_\_

        Preliminary Hearing:           Yes  X    No \_\_\_\_

        Motion to Suppress:            Yes  X    No \_\_\_\_

4.  How did you plead?

        Guilty \_\_\_\_    Not Guilty  X    Nolo Contendere \_\_\_\_

        Any other plea (specify) _____

5.  If you went to trial, what kind of trial did you have?

        Jury  X    Judge alone \_\_\_\_    Judge alone on a transcript \_\_\_\_

6.  Did you testify at your trial?              Yes \_\_\_\_    No \_\_\_\_

7.  Did you have an attorney at the following proceedings:

    (a)    Arraignment            Yes  X    No \_\_\_\_

    (b)    Preliminary hearing     Yes  X    No \_\_\_\_

    (c)    Time of plea            Yes  X    No \_\_\_\_

    (d)    Trial                  Yes  X    No \_\_\_\_

    (e)    Sentencing            Yes  X    No \_\_\_\_

    (f)    Appeal               Yes  X    No \_\_\_\_

    (g)    Other post-conviction proceeding    Yes  X    No \_\_\_\_

8.  Did you appeal your conviction?        Yes  X    No \_\_\_\_

    (a)    If you did, to what court(s) did you appeal?

        Court of Appeal         Yes  X    No \_\_\_\_

        Year: _2008_    Result: _Denied_

        Supreme Court of California    Yes  X    No \_\_\_\_

        Year: _2008_    Result: _Denied_

        Any other court        Yes  X    No \_\_\_\_

        Year: _2008_    Result: _Denied_

    (b)    If you appealed, were the grounds the same as those that you are raising in this

petition?                                          Yes _X_   No_____

    (c)    Was there an opinion?                 Yes _____   No _X_

    (d)    Did you seek permission to file a late appeal under Rule 31(a)?

                                               Yes _X_   No _X_

If you did, give the name of the court and the result:

_Santa Clara County – Denied_

_____

9. Other than appeals, have you previously filed any petitions, applications or motions with respect to this conviction in any court, state or federal?    Yes _____   No_____

[Note: If you previously filed a petition for a writ of habeas corpus in federal court that challenged the same conviction you are challenging now and if that petition was denied or dismissed with prejudice, you must first file a motion in the United States Court of Appeals for the Ninth Circuit for an order authorizing the district court to consider this petition. You may not file a second or subsequent federal habeas petition without first obtaining such an order from the Ninth Circuit. 28 U.S.C. §§ 2244(b).]

    (a)    If you sought relief in any proceeding other than an appeal, answer the following questions for each proceeding. Attach extra paper if you need more space.

    I.    Name of Court: _Santa Clara County_

        Type of Proceeding: _Romero hearing_

        Grounds raised (Be brief but specific):

        a. _Tried to get my prior strike striken_

        b. _____

        c. _____

        d. _____

        Result: _Denied_    Date of Result: _3/21/2007_

    II.    Name of Court: _____

        Type of Proceeding: _____

        Grounds raised (Be brief but specific):

PET. FOR WRIT OF HAB. CORPUS    - 4 -

1

2

3    10.    Does the complaint which you are seeking to file raise claims that have been presented in

4    other lawsuits?                                              Yes ____ No ____

5    Please list the case name(s) and number(s) of the prior lawsuit(s), and the name of the court in which

6    they were filed.

7

8

9        I consent to prison officials withdrawing from my trust account and paying to the court the

10   initial partial filing fee and all installment payments required by the court.

11       I declare under the penalty of perjury that the foregoing is true and correct and understand

12   that a false statement herein may result in the dismissal of my claims.

13

14   __9/0/09_____            _____

15        DATE                     SIGNATURE OF APPLICANT

16

17

18

19

20

21

22

23

24

25

26

27

28

a._____

b._____

c._____

d._____

Result: _____ Date of Result:_____

III.    Name of Court: _____

Type of Proceeding: _____

Grounds raised (Be brief but specific):

a._____

b._____

c._____

d._____

Result: _____ Date of Result:_____

IV.    Name of Court: _____

Type of Proceeding: _____

Grounds raised (Be brief but specific):

a._____

b._____

c._____

d._____

Result: _____ Date of Result:_____

(b)    Is any petition, appeal or other post-conviction proceeding now pending in any court?

Yes _____    No_____

Name and location of court: _____

B. GROUNDS FOR RELIEF

State briefly every reason that you believe you are being confined unlawfully.  Give facts to support each claim.  For example, what legal right or privilege were you denied?  What happened?  Who made the error?  Avoid legal arguments with numerous case citations.  Attach extra paper if you

PET. FOR WRIT OF HAB. CORPUS        - 5 -

used more space. Answer the same questions for each claim.

[Note: You must present ALL your claims in your first federal habeas petition. Subsequent petitions may be dismissed without review on the merits. 28 U.S.C. §§ 2244(b); McCleskey v. Zant, 499 U.S. 467, 111 S. Ct. 1454, 113 L. Ed. 2d 517 (1991).]

Claim One: SEE ATTACHED PAPER

Supporting Facts:

Claim Two: SEE ATTACHED PAPER

Supporting Facts:

Claim Three: SEE ATTACHED PAPER

Supporting Facts:

If any of these grounds was not previously presented to any other court, state briefly which grounds were not presented and why:

PET. FOR WRIT OF HAB. CORPUS            - 6 -

List, by name and citation only, any cases that you think are close factually to yours so that they are an example of the error you believe occurred in your case. Do not discuss the holding or reasoning of these cases:

_____

_____

_____

Do you have an attorney for this petition?          Yes____     No__X__

If you do, give the name and address of your attorney:

_____

    WHEREFORE, petitioner prays that the Court grant petitioner relief to which s/he may be entitled in this proceeding. I verify under penalty of perjury that the foregoing is true and correct.

Executed on __9/21/09__                    _____
                    Date                          Signature of Petitioner

(Rev. 6/02)

PET. FOR WRIT OF HAB. CORPUS          - 7 -

Claim one: This petition should be granted because appellants constitutional rights to represent himself and to due process of law were violated by the trials courts refusal to allow appellant to represent himself unless I was prepared to begin trial with no continuance whatsoever thereby. Requiring me to proceed to trial represented by an attorney with whom I had a long-established conflict and in whom I had no confidence, trust or faith in...

(A) Supporting facts: I had a Rocky Relationship with my court-appointed counsel. Prior to my preliminary hearing, I filed a marsden motion complaining, inter alia, that my attorney had rarely conferred with me. Counsel advised the court that my case had been assigned to another attorney while he had been on paternity leave but he was now back on the case. After he promised to visit me twice in the next two weeks, the court denied my motion. (ART 3-7.)
A month later, on the date of my preliminary hearing, I made a second marsden motion. I stated that I had not only seen my lawyer four times since october of the previous year. (IRT 2) court denied motion (1RT 7).
On october 4, 2006, the day set for the hearing of in limine motions at the begining of trial prior to selection of the jury, I filed a third Marsden motion. (ACT 1-8) In my written motion, I complained that I had no Trust in my lawyer and had not received a discovery packet for my case, "so I might be able to help myself." (ACT 5.) At the hearing on the motion, I told the trial judge that "I have no confidence in my lawyer. I have no Trust or Faith in him." (3RT 21.)
The court denied the motion (Marsden). (3RT 26-27.) At that

1  point, I told the court I "wanted to exercise my constitu-
2  tional right to go pro per." (3RT 29). The court gave me a
3  form to complete and recessed until the district attorney, who
4  had been excluded during the Marsden hearing(s) returned. (3RT 30)
5  The court revised the form from me and I indicated that I
6  was giving up my right to counsel "with outrage." (3RT 32-33) The trial
7  judge then advised me that I was prepared to begin the in
8  limine motions that day, and I asked if the trial could be continu-
9  ed for "a week or so." (3RT 35) The following colloquy took place:
10 The court: You understand what we are going to start proceedin-
11 gs immediately?
12 The defendant: we can't put it off for like a week or so?
13 The court: No
14 The defendant: why not?
15 The court: Because this case has been assigned for trial, both
16 sides are ready, and we have an officer that's going to be test-
17 ifying in an evidentiary hearing, it's called a 402 hearing, to
18 determine whether or not the court is going to allow your
19 statement or confession to the officer be admissible into
20 evidence; that's a hearing we will do this morning. I asked
21 you if you are ready to proceed and you said you were
22 ready. If you are not ready to proceed, then I will not allow
23 you to represent yourself Mr. Alverez will continue to represent
24 you.
25 The defendant: why is it so hard for me to fire Mr. Alverez? It's
26 a conflict of interests here. It's been for X amount of months. Each
27 judge -- obviously, it's not me the right to dismiss him (sic).
28 The court: Okay. All I could tell you, based on what I heard this

(2)

1 morning, your motion to have him substituted as attorney of

2 record is denied. Now we will proceed to trial, and we are either

3 going to proceed with me alverez representing you or you

4 representing yourself, but only if you are prepared to start today.

5 If you are not prepared--

6 The defendant: I am not prepared.

7 The court: Then are are--

8 The defendant: I don't have a full discovery packet.

9 The court: Okay, your request to represent yourself is

10 denied. At this time, Mr. Alverez will continue to be your attorney,

11 okay; and we will proceed with the 402 hearing. The point is

12 Mr. knight, is that I'm doing not going to delay the trial. We

13 are ready to proceed and earlier you told me you were

14 ready to go forward with the trial and I said fine. If you

15 are ready to go forward with the trial and I am convinced

16 that you would intelligently and knowingly waive your right

17 to an attorney, then I will allow you to represent yourself. I

18 think it's a bad idea because you just simply do not have

19 the law school education, the experience Mr. Alverez has, but

20 that's your right. You want to represent yourself, I will allow

21 you to do so before starting today.

22 The defendant: How could I represent myself, I don't have

23 my full discovery packet?

24 The court: well--

25 The defendant: He hasn't given me nothing... (3 RT 35-37)

26 (B.) The trial court denied me my constitutional Right to self Repre-

27 sentation by conditioning that Right on appellant being ready to

28 immediately commence trial even though I had not been provided

(3)

1  with discovery.

2  The United States Supreme Court held in Faretta vs. California

3  (1975) 422 U.S. 806, that a criminal defendant has a constitutional

4  right to self-representation under the Sixth Amendment to the

5  United States Constitution if he voluntarily and intelligently elects

6  to represent himself. (Id, at pp. 818-A, 835; People vs. Windham

7  (1977) 19 Cal. 3d 121, 124). The Faretta opinion, however, did not discuss the

8  timing of the request for self-representation. (People vs. Givan (1992)

9  4 Cal. app. 4th 1107, 1112.) This court addressed this issue in Windham,

10 concluding that "in order to invoke the constitutionally mandated

11 unconditional right of self-representation a defendant in a criminal

12 trial should make an unequivocal assertion of that right within a

13 reasonable time prior to the commencement of trial." (Id, at pp. 127-

14 128) "However, once a defendant has chosen to proceed to trial

15 represented by counsel, demands by such defendant that he be

16 permitted to discharge his attorney and assume the defense himself

17 shall be addressed to the sound discretion of the court." (Id, at

18 p. 128; People vs. Bloom (1989) 48 Cal. 3d 1194, 1220).

19 This court in Windham, however, in imposing the reasonable time

20 requirement, cautioned that it "must not be used as a means of limiting

21 a defendant's constitutional right of self-representation." Windham, supra,

22 at p. 128, fn. 5) The court explained the requirement's purpose is to

23 prevent the defendant from misusing "the Faretta mandate as a means

24 to unjustifiably delay a scheduled trial or to obstruct the orderly

25 administration of justice. For example, a defendant should not be permitted

26 to wait until the day preceeding trial before he moves to represent him-

27 self and requests a continuance in order to prepare for trial without some

28 showing of reasonable cause for the lateness of the request." (Ibid)

(4)

1  The court further explained that "when the lateness of the
2  request and even the necessity of a continuance can be reasonably
3  justified the request should be granted. When, on the other hand
4  a defendant merely seeks to delay the orderly processes of justice,
5  a trial court is not required to grant a request for self-
6  representation without any ability to test the request by a reasonable
7  standard." (Ibid)
8  Applying Faretta and Windham to the case at bench, appellant Knight's
9  request "can be reasonably justified," and my request should have
10  been granted. The record reflects that ~~appll~~ appellant had been
11  dissatisfied with my court-appointed counsel for more than six months
12  prior to trial. I made my Faretta motion only after my third Marsden
13  motion had been denied. My request for a continuance was also reasonable.
14  One of the reasons for my Marsden motion was that my attorney
15  had not provided me with a discovery packet "so I might be able to
16  help myself" (ACTs) I could not be expected to proceed to trial
17  without ~~a complete~~ the prosecutor's discovery in the case, information
18  which a competent attorney would have received well before
19  trial.
20  The ruling of the appellate court bellow that appellant's request was not
21  timely conflicts with Windham and with several lower court opinions
22  which ruled that a Faretta motion was timely when made prior to jury
23  selection. See e.g. (People vs. Nicholson) (1994) 24 Cal. App. 4th 584, 592;
24  People vs. Herrera (1986) 104 Cal. App. 4th 167, 175) Here, my request was made
25  10 days before jury selection was commenced and 9 days before
26  testimony was taken.
27  "The fact that I requested the continuance because I truly needed
28  discovery, and not to delay the trial is further evidenced by my two

COURT PAPER
STATE OF CALIFORNIA

1 additinal Marsden motions on Oct. 5 and 10, 2006 once trial had
2 commenced. (3RT 80-84, 93-100) My major complaint in both of
3 these motions was that I still had not received discovery from
4 my attorney."
5  This court held in People vs. Maddox (1967) 67 Cal. 2d 647, that it was
6 an abuse of discretion and a denial of due process to deny a request
7 for a reasonable continuance to allow an in pro per defendant to
8 prepare a defense. The factual situation in Maddox is closely
9 analogous to that presented here. Defendant Maddox's request to
10 represent himself, which had repeatedly been denied previously, was
11 granted by a trial judge on the day set for trial. The defendant
12 asked for a continuance because he had not "had the opportunity to
13 look-- to go to the law library to prepare to subpoena any
14 witnesses." The court denied the request for a continuance and
15 directed the impaneling of the jury. (Id., at pp. 649-650).
16  This court noted that an in proper defendant is
17 not entitled to "privileges and indulgences not accorded to
18 defendants who are represented by counsel," quoting from
19 People vs. Mattson (1959) 51 Cal. 2d 777, 794), but neither is he
20 entitled to "less consideration than such persons. In particular he must
21 be given, if a reasonable continuance is necessary for this
22 purpose, it must be granted upon timely request. To deny him that
23 opportunity would be to render my right to appear in propria
24 persona an empty formality, and in effect deny me the
25 right to counsel." (Id., at p. 653) (Emphasis in original). (See
26 also (People vs. Sheered (1997) 59 Cal App. 4th 1168, 1175).
27  The Maddox court further noted that this court had
28 established a rule in People vs. Carter (1967) 66 Cal. 2d 666,

(6)

671-672, that a defendant awaiting trial in propria persona should, at a minimum, be allowed access to such legal materials as are available at the facility in which he is confined. (Id., at p. 655, n.5) The court reversed Maddox's judgment of conviction. (See also People vs. Wilkins (1990) 225 cal. App. 3d 299, 304).

I was forced to go to trial with an attorney whom the record clearly reflects I did not trust, could not communicate with and did not believe was adequately representing me. I accepted the attorney only because I had "no other choice" given the fact that I was denied a continuance to obtain discovery which was essential for me to adequately represent myself.

(c) Whether the Erroneous Denial of My constitutional Right to represent myself is Reversible per se or The abuse of discretion standard is applicable, My Judgement of Conviction must be reversed.

A defendant's constitutional right of self-representation is one aspect of the constitutional right to present a defense under the Sixth Amendment. (See, e.g., People vs Rolan (2005) 35 cal. 4th 646, 684). The erroneous denial of this Right is Reversable per se. (McKaskle vs. Wiggins (1984) 465 US. 168, 177 n. 8; People vs. Dent (2003) 30 cal. 4th 213, 217).

More specifically, to deny a pro per defendant the resources to prepare for his defense is to render him the right to self-representation an empty formality and to in effect deny him the right to counsel. (Maddox, supra at p. 653) Such an error is prejudicial and requires reversal. (People vs Schulz (1992) 5 cal 4th 563, 574).

(7)

1  However, if this court believes that my Faretta request,
2  which was made after my case had been assigned to a trial
3  department but before jury selection begun and before any
4  in limine or pretrial motions had been litigated, was made
5  at a point that the abuse of discretion standard was
6  applicable, I urge that the court below abused its discretion.
7  This court wrote in Windham:
8  When such a midtrial request for self-representation is
9  presented the trial court shall inquire sua sponte into the
10  specific factors underlying the request thereby ensuring a
11  meaningful record in the event that appellate review is
12  later required. Among other factors to be considered by the
13  court in assessing such requests made after the commenc-
14  ment of trial are the quality of counsel's representation of
15  the defendant, the defendant's prior proclivity to substitute
16  counsel, the reasons for the request, the length and stage of
17  the proceedings and the disruption or delay, which might
18  reasonably be expected to follow the granting of such a motion.
19  (19 cal. 3d at p. 128).
20  The court abused its discretion because it considered only
21  one of these factors; that granting my Faretta motion
22  would result in a delay, albeit a delay only of "a week or
23  so." The court did not consider other factors which militat-
24  ed in favor of granting the motion. For example, although
25  I had previously asked to substitute counsel, it had always
26  been the same counsel. For months, I had filed marsden
27  motions against the same attorney. Moreover, the Faretta
28  request was not made "mid-trial" but rather before jury

(8)

selection had even commenced and before any in limine motions had been heard. Finally, the district attorney would not have been seriously inconvenienced by a brief delay. Of the 30 witnesses called, 19 were local law enforcement officers and the remaining 11 were local lay persons.

The court's conclusion in People vs. Nicholson, supra, 24 Cal. App. 4th 584, that the error in denying Faretta motions was not harmless is relevant here:

Faretta is based on the belief that the State may not constitutionally prevent a defendant from "controlling his own fate by forcing on him counsel who may present a case which is not consistent with the actual wishes of the defendant." (People vs. Windham, supra, 19 Cal. 3d at p. 130) Had Nicholson and Goldsberry been permitted to control their own fate, the evidence against them would have been no less overwhelming. But we simply cannot discount the fact that it might have been to their advantage to conduct voir dire and to present opening statements and closing arguments, thereby giving the jury an inconvenience of cross-exa- mination). (Cf. People vs Tyner, supra, 76 Cal. App. 3d at p. 356; People vs. Herrera, Supra, 104 Cal. App. 3d at p. 175). While it seems safe to say the defendants could not under any circumstances have been acquitted, they might have been able to avoid a true finding on the special circumstance allegation.

Furthermore, the timing issue in this case is, as indicated at the outset, a close call. Had we taken



(9)

1  the position that the motions were timely because
2  trial had not commenced on August 4 and that it did
3  not in fact begin until August 10, the erroneous denial
4  of the motions would per se require reversal. All things
5  considered, we cannot say the error was harmless. (Id.
6  at p.595).
7      The same may be said of the instant case. The
8  trial court's denial cannot be considered harmless
9  beyond a reasonable doubt under Chapman vs Calif
10  ornia (1967) 586 U.S. 18, 24. I did not testify at
11  trial and representing myself would have given the
12  jury "an opportunity to hear from" me.
13  The reversal of my judgement of conviction is
14  required by the words of the United States
15  Supreme court in Faretta, supra, itself:
16  To force a lawyer on a defendant can only lead him
17  to believe that the law contrives against him.
18  moreover, it is not inconceivable that in some rare
19  instances, the defendant might in fact present his
20  case more effectively by conducting his own defense.
21  Personal liberties are not rooted in the law of
22  averages. The right to defend is personal. The defend-
23  ant's and not his lawyer or the state, will bear the
24  personal consequences of a conviction. It is the
25  defendant, therefore, who must be free personally to
26  decide whether in his particular case counsel is
27  to his advantage. And although he may conduct
28  his own ultimately to his own detriment, his

(10)

1  choice must be honored out of "that respect for
2  the individual which is the lifeblood of the law."
3  Illinois vs. Allen, 397 u.s. 337, 350-351 (Brennan, J.,
4  concurring). ~~added~~ (422 u.s. at p.834)
5  Appellant (me) was denied his constitutional right to
6  due process of law by being forced into the
7  untenable choice of either ① representing himself but
8  without discovery to which he was entitled and
9  without a short continuance to obtain and review
10 that discovery last with whom appellant had a
11 well-established and long-standing conflict and in
12 whom he had no confidence, trust or faith.
13 (3 RT 21). As a result, this petition should be
14 granted and the matter remanded for a new
15 trial.
16 Claim two: This petition should be granted because the
17 trial court's admission of appellants (me) taped inculpatory
18 statement violated my constitutional rights and requires
19 reversal of my judgment of conviction.
20 (A) Introduction ...
21 Santa Clara County police detective Brian Gilbert
22 testified at a 402 hearing on the first day of trial
23 that he interviewed me at the Santa Clara police
24 department on the day of my arrest (3 RT 38-40).
25 The interview was audiotaped and video taped. (3 RT
26 43-44). Gilbert testified that he read me my
27 miranda rights and I said I understood them, but
28 he did not ask me if I waived my rights or if

1  I wished to speak to the officer. He just started

2  asking questions. (3RT 43, 54). This was the officers

3  standard approach.

4  Counsel for appellant (me) moved to suppress my

5  statements on the ground that there was no

6  express waiver of my Miranda Rights. (3RT 62-63).

7  The court denied my motion (3RT89) and the

8  video tapes of my inculpatory statements were

9  admitted into evidence by the prosecutor at

10  trial and transcripts of the tape were given to

11  the jurors. (5 RT 580-83; RT 613-18; 7RT 655, 665-

12  66).

13  The trial court erred in denying my motion to

14  suppress the incriminating statements because the

15  prosecution failed to demonstrate that my statements

16  were made voluntarily and that I waived my Miranda

17  Rights.

18  (B) The prosecution failed to prove that I waived

19  my Miranda Rights.

20  In Miranda vs. Arizona (1966) 384 US. 436, the

21  United States Supreme Court addressed the admi-

22  ssibility of statements obtained from an individual

23  who is subjected to custodial police interrogation and

24  set forth certain procedures to assure that the

25  individual is accorded his priviledge under the

26  Fifth Amendment of the federal Constitution not to

27  be compelled to incriminate himself. The court held:

28  " when an individual is taken into custody or

(12)

1  Otherwise deprived of his freedom by the authorities
2  in any significant way and is subjected to questioning
3  the privilege against self-incrimination is jeopardized.
4  Procedural safeguards must be employed to protect
5  the privilege and unless other fully effective means
6  are adopted to notify the person of his rights
7  of silence and to assure that the exercise of
8  the right will be scrupulously honored, the follow-
9  ing measures are required. (1) He must be warned prior
10 to any questioning law that he has the right to the
11 presence of anything he says can be used against him
12 in the court of law and (2) he has the right to the presence
13 of an attorney and that if he could not afford an attorney
14 one will be appointed for him prior to any questioning if
15 he so desires. Opportunity to exercise these rights must
16 be afforded to him throughout the interrogation.
17 (3) After such warnings have been given and such
18 opportunity afforded him the individual may knowingly
19 and intelligently waive these rights and agree to answer
20 questions or make a statement. But unless and until such
21 warnings and waiver are demonstrated by the prosecu-
22 tion at trial, no evidence obtained as a result of
23 interrogation can be used against him." (384 U.S. at
24 pp. 478-479). (Italics added, fn. omitted). The court in
25 Miranda also held that "a valid waiver will not be
26 presumed simply from the silence of the accused after
27 warnings are given or simply from the fact that a
28 confession was in fact eventually obtained." (Id. at p.

(13)

475).

In this case, officer Gilbert asked me if I understood each of the rights and I responded, "Yeah" but Gilbert did not ask me if I wanted to waive my rights and talk to the officers. Nor did he ask me to sign a written waiver form. Instead, he immediately continued to interrogate me.

Although an express waiver or oral statement of waiver of one's Miranda rights "is usually strong proof of the validity of that waiver," it is not necessary to establish waiver. (See, e.g., North Carolina vs. Butler (1979) 441 U.S. 369, 373). "The question is not one of form but rather whether I infact knowingly and voluntarily waived the rights delineated in the miranda case. As was unequivocally said in Miranda, mere silence is not enough. That does not mean that the defendant's silence, coupled with an understanding of his rights and a course of conduct indicating waiver, may never support a conclusion that a defendant has waived his rights. The courts must presume that a defendant did not waive his rights; the prosecution's burden is great; but in at least some cases waiver can be clearly inferred from the actions and words of the person interrogated." (Ibid).

To satisfy the prosecution's heavy burden, it must introduce sufficient evidence to establish that under the "totality of the circumstances,"

(14)

23

the defendant was aware of "the nature of the right being abandoned and the consequences of the decision to abandon it." (Moran vs. Burbine (1986) 475 U.S. 412, 421). The governments burden to make such a showing "is great," and the court will "indulge every reasonable presumption against waiver of fundamental constitutional rights." (United States vs. Heldt (9th cir. 1984) 745 F.2d 1275, 1277 (citing Johnson vs. Zerbst (1938) 304 U.S. 458, 464).

Because of the circumstances discussed in Section A., this court should grant this petition and reverse Appellants (me) judgement of conviction and remand the matter for a new trial without the admission of my inculpatory statements as there was no expression of waiver of my Miranda rights.

(c) Admission of Appellants Inculpatory Statement was not harmless beyond a Reasonable doubt.

Admission of my statement was most prejudicial. Without the statement, the prosecution's case would have been weaker. As the supreme Court said in Arizona vs. Fulminante (1991) 499 U.S. 279, a defendants inculpatory statement" is probably the most probative and damaging evidence that can be admitted against him." (Id., at P. 296). It "is not just another piece of evidence; it is the one item that, alone, can form the basis of conviction by removing what otherwise would be a Reasonable doubt" (Ibid.; collazo vs. Estelle (9th cir. 1991) 940 F.2d 411, 424 (enbanc),

COURT PAPER
STATE OF CALIFORNIA
TO. 113 (REV. 3-95)

1   cert. den. 502 U.S. 1031).

2   The importance of my admissions is seen by

3   the prosecutor's repeated references to them in

4   both portions of his closing argument. (See, e.g. 7 RT

5   768-721, 801-805 809). Obviously, the prosecutors

6   considered my statement significant or he would not

7   have mentioned it so prominently in his summation.

8   At this court has observed, "there is no reason why

9   we should treat this evidence as any less 'crucial'

10  than the prosecutor -- and so presumably the

11  jury -- treated it." (People vs. Cruz (1964) 61 Cal. 2d

12  861, 868, See also (People vs. Powell (1967) 67 Cal.

13  2d 32, 57; people vs. Pantoja (2004) 122 Cal. App.

14  4th 1, 14-15). The ninth circuit has also recogn-

15  ized, in asserting prejudice, "statements from the

16  prosecutors matter a great deal." (United States vs.

17  Kojayan (9th Cir. 1993) 8 F.3d 1315, 1323. See also

18  Kyles vs. Whitley (1995) 514 U.S. 419, 444).

19      When a trial court has erroneously admitted a

20  defendant's involuntary statement(s) or confession(s), the

21  error is subject to harmless error only analysis under the

22  beyond-a-reasonable-doubt standard of Chapman vs. Califor-

23  ia, supra, 386 U.S. 18 (Arizona vs. Fulminante, supra,

24  499 U.S. at p. 310). "The beyond-a-reasonable-doubt

25  standard of Chapman (requires) the beneficiary of a

26  federal constitutional error to prove beyond a

27  reasonable doubt that the error complained of

28  did not contribute to the verdict obtained." (citation

(16)

1  'To say that an error did not contribute to the

2  ensuing verdict is ... to find that error unimportant in

3  relation to everything else the jury considered on

4  the issue in question, as revealed in the record.'

5  (citation). Thus the focus is what the jury actually

6  decided and whether the error might have

7  tainted its decision. That is to say, the issue is 'whether

8  the ... verdict actually rendered in this trial was surely

9  unattributable to the error.' (citation). (people vs. Neal)

10  (2003) 31 cal. 4th 63, 86).

11     Here, it cannot be said that the jury's verdict

12  was "surely unattributable" to the admission of my

13  incriminating statements, and therefore, this petition

14  should be granted and my judgement of conviction

15  should be reversed.

16  Claim Three: This petition should be granted because

17  the trial court's imposition of consecutive sentences on

18  counts 1, 2, 6 and 8 on Section 12022.53(b)

19  enhancements violated appellate's (me) constitutional

20  Right to jury trial.

21     Although my trial counsel discussed cunningham

22  vs. California (2007) 549 U.S. 270, with the trial court

23  at sentencing (see 7RT 841), the court ruled that: "I

24  believe that it's clear that the decision which to

25  impose concurrent or consecutive sentencing under

26  California sentencing law is not precluded by decisions

27  in Appendi, Blakely or Cunningham." (7 RT 846). The court

28  sentenced me to consecutive sentences on counts one,

(17)

1  two and three. (7RT 842-845).

2  I recognized, since the date of my Sentencing, this

3  court has ruled in People vs. Black (2007) 41 cal. 4th 799

4  (Black II), that a jury trial is not required on the factors

5  that justify imposition of consecutive Sentences. I'm hoping this

6  court reconsiders its decision in Black in the light of the

7  United States Supreme Court's grant of a petition for a writ

8  of certiorari, in the case of Oregon vs. Ice (2006) 343 or

9  248, 170 p. 3d 1049, cert. granted (3/7/08) 123 S. ct. 1657, 170

10  L. ED. 2d 353 (No. 07-901). Ice was convicted of six felony

11  charges. Over defense counsel's objections that Apprendi vs

12  New Jersey (2000) 530 U.S. 466 required that a jury

13  determine the facts on which consecutive Sentences

14  could be imposed, the trial court imposed consecutive

15  Sentences.

16  The Oregon Supreme Court reversed, holding that the

17  federal constitutional right to jury trial requires that

18  facts supporting the imposition of consecutive Sentences

19  be found by a jury, rather than a judge. The United

20  States Supreme Court has granted certiorari...

22  Conclusion: For the foregoing Reasons, (I) Petitioner Terace

23  Demond Knight respectfully requests that Review be

24  granted in this matter.

(18)

Mr. Terrace Knight # T-75137
P.V.S.P (A5U-157)
P.O. Box 8505
Coalinga, Ca. 93210

LEGAL
MAIL

United States District Court for the
Northern District of California
U.S. Court house
450 Golden Gate Ave.
San Fransico, Ca. 94102-3483

UNITED STATES POSTAGE
$ 01.29°
02 1R
0002098197   JAN 14 2010
MAILED FROM ZIPCODE 93210

JAN
15
2010
PM

C Debs

01/13/10